# SUPREME COURT.

URIEL MARKELL, administrator of ROBERT MARKELL, deceased, agt. GEORGE E. BENSON.

*Examination of a party in his own behalf — when and when not allowed — Code of Civil Procedure, section 829 — Deceased person — Action by representative of.*

Action by administrator against defendant, a practicing physician, to recover damages for negligence in causing the death of testator by giving to him an overdose of morphia. On the trial the wife of the plaintiff and mother of the deceased, also a daughter of the plaintiff, and the plaintiff himself, were examined as witnesses in his behalf. The wife and daughter testified to the visit of the defendant to the deceased, and the incidents thereof, whilst the plaintiff, who had been present in the sick room when the defendant was in attendance, testified to an interview he had with the defendant when the latter was summoned to the house:

*Held*, that, under the provisions of section 829 of the Code of Civil Procedure, the defendant was entitled to be examined in his behalf to prove what had taken place at his interview with the deceased at the visit, during which the plaintiff claimed that the alleged fatal dose of morphia was left with directions to be taken if the pain of the patient returned.

When the plaintiff testified to a conversation between him and the defendant which related and referred to the transaction between the deceased and the defendant, upon which the case turned, he gave evidence "*concerning the same transaction or communication*" upon which the defendant was subsequently examined.

Evidence of admissions as to what took place at a certain time *concern* the transaction to which they refer. The language of the section does not limit the examination of a party in his own behalf to the solitary case when his opponent had detailed the events of a transaction or communication from personal knowledge because present thereat, but permits him to be examined "concerning a personal transaction or communica-

Markell agt. Benson.

tion between the witness and the deceased person," when the  *  *  * administrator  *  *  *  is examined in his own behalf  *  *  *  *concerning* the same transaction or communication.

Where the wife of the administrator is allowed to testify concerning a personal transaction or communication ·between the deceased person and the defendant, the defendant should also be allowed to be examined in his own behalf concerning the " *same transaction or communication.*"

Section 399 of the old Code commented on, and a nice distinction drawn between that section and section 829 of the Code of Civil Procedure.

*Special Term,* 1878.

MOTION by plaintiff for a new trial upon the judge's minutes.

*Mr. Chace* and *Mr. Cady*, for plaintiff.

*Mr. Esselstyn* and *Mr. Delamarter*, for defendant.

WESTBROOK, *J.* — Upon the trial of this cause at the Columbia circuit, in October, 1877, a verdict was rendered for the defendant, which the plaintiff moves to set aside for the alleged error of the judge in the admission of evidence.

The action was brought to recover damages flowing from the death of Robert Markell, which was alleged to have been caused by giving to the deceased an overdose of morphia, by the direction of the defendant. The deceased, on the 29th day of August, 1876, was taken sick with bilious colic, and the defendant, a practicing physician in the city of Hudson, was called to attend him. A hypodermic injection of morphia was administered, and a dose of the same substance left to be taken at 7 o'clock P. M. On the succeeding day (August 30, 1876) the defendant again visited deceased and gave a second hypodermic injection of morphia, and the plaintiff claimed that defendant also left a dose of morphia of from three to five grains and contained in a blue paper, with directions to administer the same if the pain of the deceased returned. The plaintiff further claimed that about

Markell agt. Benson.

9 o'clock of that night such pain having returned, in conformity with the directions of the defendant, the morphia was given, and in consequence thereof the deceased died about 3 o'clock of the morning of August 31, 1876. The defendant denied that he had left any morphia to be taken on the thirtieth, and also insisted that the death was not the result of morphia.

On the trial of the action the wife of the plaintiff, and mother of the deceased, a daughter of the plaintiff, and the plaintiff were examined as witnesses in his behalf. The wife and daughter testified to the visit of the defendant to the deceased, and the incidents thereof, whilst the plaintiff, who had been present in the sick room, when the defendant was in attendance, testified to an interview he had with the defendant when the latter was summoned to the house on the morning of the thirty-first, as follows: " On the way to the house, he said, ' what have you given or have you done?' I replied, ' We have given the powder you left.' He replied, ' I left no powder, nor did I give directions to give him any.' I answered, ' You surely did, doctor.' He did not contradict this. He said, ' I fear there is a great mistake about this powder, I missed it between three and four yesterday afternoon and I supposed I had lost it.' I replied, ' It is a pity, doctor, that you did not retrace your steps.' " After this evidence had been given the defendant was offered, as a witness in his own behalf, to prove what had taken place at his interview with the deceased on the thirtieth, the visit during which the plaintiff claimed that the alleged fatal dose of morphia was left with directions to be taken if the pain of the patient returned, and was objected to on the part of the plaintiff under section 829 of the Code of Civil Procedure. The objection was overruled and the party was sworn and examined as a witness and emphatically denied that during that attendance upon the deceased he had left any morphia to be taken by him. It is claimed that the admission of this evidence was erroneous.

The section of the Code upon which the objection is based declares that "a party * * * shall not be examined as a witness in his own behalf or interest * * * against the * * * administrator * * * of a deceased person * * * concerning a personal transaction or communication between the witness and the deceased person, * * * except where the * * * administrator * * * is examined in his own behalf * * * or the testimony of * * * the deceased person is given in evidence concerning the same transaction or communication." It was held at the circuit, first, that when the plaintiff testified to a conversation between him and the defendant which related and referred to the transaction between the deceased and the defendant, upon which the case turned, he gave evidence "concerning the same transaction or communication" upon which the defendant was examined. Evidence of admissions as to what took place at a certain time *concern* the transaction to which they refer. The language of the Code, it seems to me, does not limit the examination of a party in his own behalf to the solitary case when his opponent had detailed the events of a transaction or communication from personal knowledge because present thereat, but permits him to be examined "concerning a personal transaction or communication between the witness and the deceased person," when "the * * * administrator * * * is examined in his own behalf * * * *concerning* the same transaction or communication." The second ground upon which the evidence was received was this : By section 830 of the Code, then in force but now repealed, the husband or wife of the party offered was also excluded whenever the party was excluded by the previous section. This provision, it was held, was equivalent to a declaration that all the provisions of section 829 were applicable to both husband and wife, and that it was based upon the well known maxim of the common law that "husband and wife are one person." If one could not be examined when the other could not, it would seem, from the

Markell agt. Benson.

spirit and reason of this section, founded as it was upon the unity of their persons, that when either could be called and was called, then the mouth of the opposite party was opened in regard to the same transaction or communication concerning which either had given evidence. Any other construction of the Code would, it seemed to me, work most manifest injustice. We then argued that the reason for the exclusion of the evidence of the party was, that he ought not to be allowed to manufacture a case, or a defense, against a dead man's estate by proving a transaction or communication with one, whose lips were closed. If, however, the representative of the deceased person gave evidence concerning the transaction, then the party could speak; but if the husband or wife, as the case might be, of his opponent, who was really "one flesh" with the person to the record could testify, and the opposite party be still compelled to remain silent, then the precise evil was done to the living party, from which the section was designed to shield the dead one, which was that as the dead could not contradict the living party, the latter must also remain silent, unless justice to him required that he should be heard in regard to a transaction concerning which the representative of the dead had knowledge and had been heard. Then when the representative of the dead has spoken, very properly, as the reason for the exclusion of the evidence ceased, the exclusion itself ceased to be operative. If then the representative of the dead has personal knowledge of a transaction or communication between such deceased and the opposite living party, and either by his or her own words, or those of one who with the other make "one person," is heard as to the details thereof, no sound reason exists to exclude the evidence of the opposite party. His antagonist has been heard, the reason for his exclusion has ceased to operate, and if excluded, a statute designed to secure silence by the interested living party against the dead, only when the latter cannot be heard through his or her representative, has been so construed that the living cannot

Markell agt. Benson.

be heard in his own defense when the reason for his exclusion no longer exists, and when the representative of the dead has been fully heard upon the same subject. Is the law so unjust, and does any iron rule of construction compel the court so to hold? It was thought otherwise upon the trial, and that opinion remains unchanged.

For these two reasons, which were stated upon the trial, the defendant was allowed to be examined. The conclusion was hastily formed; but, though it has been carefully since considered, and without, as we hope, any desire to sustain an erroneous ruling, our conviction remains that it must be adhered to. In this case, the wife, who was the *alter ego*, the other self of the plaintiff, and his daughter, who were also the mother and sister of the deceased, have testified that the defendant left the morphia to be administered. This was supplemented by the evidence of the plaintiff himself, who, whilst not professing to detail the transaction between the deceased and the defendant as he witnessed it, undertook to give a conversation with the defendant " concerning" it, in which, without swearing directly that the defendant left the morphia with directions for its being taken, he does swear that he so asserted the fact and the truth to be, and that defendant did not contradict it. To have refused the defendant the right, under such circumstances, of being heard, was, it then seemed to me, and still seems, a simple and unadulterated perversion of justice; and he was accordingly permitted to narrate the events of August 30, 1876, concerning which the whole family of his opponent, and the opponent himself, had given evidence.

Upon the present argument, however, a recent case in the court of appeals (*Chadwick* agt. *Fowler et al.*) is referred to as overruling one of the grounds (the first) upon which the evidence was admitted, and the new argument founded thereon will now be considered. In that case, according to the manuscript opinion furnished, certain declarations of the plaintiff were proved by the defendant, as to what plaintiff

had agreed with a deceased person to give for certain land. The plaintiff was then called, and was allowed to answer this question: "Did you ever agree to pay thirty dollars an acre for that land?" The court of appeals held that this evidence was improperly received. The case referred to does not present the question of the admissibility of the evidence, because the wife of the opposite party had testified in regard to the same communication, and is also unlike the present for two reasons:

First. The objection was founded upon section 399 of the old Code and not upon section 829 of the new. By the former the prohibition did not "extend to any transaction or communication *as to which* any such * * * administrator * * * shall be examined on his own behalf." There is a difference between the examination of a witness "as to" a transaction and the giving of testimony "*concerning*" it. The former involves the knowledge of the witness of its details, whilst the latter may or may not do so. The Code as it now is (*sec.* 829) and as it was at the time of this trial allowed the party to be sworn against the administrator when the latter had been "examined in his own behalf * * * *concerning* the same transaction or communication." Treating the language of the present section literally, as the justice of this case requires, the conclusion at the circuit is adhered to, that when the plaintiff gave evidence of the conversation between himself and defendant, which conversation purported to unfold and develop the occurrences at the interview between the defendant and the deceased, he gave evidence "*concerning* the same transaction or communication," in regard to which the defendant was subsequently examined.

Second. In the case decided in the court of appeals, so far as the opinion discloses, there was no attempt by the witness, under the guise of proving admissions by the plaintiff, to put in evidence his own version of the original transaction with the deceased, which he witnessed, by assertions made to the plaintiff of the events and conversations which then trans-

Markell agt. Benson.

pired. In this the plaintiff declares and iterates to the defendant his own declarations as to the very pith and marrow of the transaction. He swears he told the defendant, " We have given the powder you left; " and when the defendant denied leaving a powder, or giving directions to have any taken, the plaintiff again asserts : " You surely did, doctor." The manifest effect of this was to give the plaintiff the benefit with the jury of his version of the turning and crucial point of the case. The cause depended upon the fact whether the defendant had or had not left the morphia to be administered, and the plaintiff gave to the jury his solemn assertion to the defendant that the medicine had been left and the same was taken by his orders. Under such circumstances to allow the defendant only to deny the plaintiff's statement contained in his evidence and that given immediately after, as follows, " he did not contradict this," would still leave with the jury the truth of the fact embodied in the positive statement of the plaintiff undenied by the oath of the defendant. To the mind of the ordinary juror, the declarations of the plaintiff as to the occurrences of August 30, 1876, made in the presence of and to the defendant, would carry substantially the same weight as his narration of them under oath. As the plaintiff had the full benefit of his version of the transaction upon which the result of the action depended, the defendant was allowed to deny, under oath, the truth of the facts contained in the declarations made to him by the plaintiff, and proved to have been so made by the latter's own examinations in his own behalf. Unless this had been allowed, the denial of the defendant was imperfect and incomplete, the assertion of the plaintiff that the defendant was guilty of the very negligence imputed remained uncontradicted, and the defendant's version of the occurrences at the interview of August 30, 1876, without the benefit of which the full force of the conversation with the plaintiff to which the latter had testified, could not be appreciated, would not have been given. As the claim of the family, who were the parties interested, had been supported by their testimony

Markell agt. Benson.

disclosing the transaction in question, it seemed but reasonable to allow the defendant to speak as to the same point in his defense.   To have held otherwise was to bind him hand and foot and deliver him over to his adversaries.   This did not then accord with our views of justice and the law, and of that opinion we still remain.

The motion for a new trial is denied.