HORACE E. CLARK, Respondent, v. SAMUEL N. DADA, Appellant.

Fourth Department, May 1, 1918.

Bills and notes — transfer of overdue note for purpose of bringing suit thereon — when transferee not real party in interest — denial by maker that he signed note — evidence raising issue for jury — when defendant may testify to transactions with person who has since become insane — Code Civil Procedure, section 829, construed — evidence opening door to proof of transactions with insane person.

Where an overdue promissory note was transferred for the purpose of allowing the transferee to bring an action thereon for the benefit of the transferor under an agreement that in case of recovery the transferee should receive a portion of the proceeds, there was never a *bona fide* assignment and the transferee was not the real party in interest within the meaning of section 449 of the Code of Civil Procedure and he is not entitled to maintain such action in his own name, at least without making his transferor a coplaintiff.

Such transfer did not create an express trust so as to enable the transferee to sue.

Where in an action upon such note transferred after maturity it appears that the defendant maker was an aged man who had been blind for many years and he alleges that he never signed the note, or that if he did he was induced thereto by fraudulent representations, and that the transfer to the plaintiff was without consideration so that he was not a holder in due course, and the evidence shows, among other things, that the note although long past due was never presented for payment either at the place named therefor, or to the defendant, until shortly before the action, the issue as to whether the defendant signed the note should have been submitted to the jury. Testimony by the defendant that the note was first called to his attention shortly before the action is equivalent to testimony that he never signed it on the day of its date.

Although it appears that the payee who transferred the note has since been committed to an insane asylum, but has not been judicially declared insane, it was error in an action brought by a subsequent transferee to exclude testimony by the defendant as to transactions with the payee upon the theory that they are inadmissible under section 829 of the Code of Civil Procedure. Said section, relating to transactions with an incompetent person, applies only in a case where such person has been adjudged a lunatic and a committee has been appointed.

Moreover, the plaintiff by putting the note in evidence opened the door to a denial by the defendant that he ever signed it, for should he prove that the note was a forgery or spurious the testimony would not have

involved a personal transaction with the insane payee as there would have been none.

Moreover, where the plaintiff called the transferee of the payee who testified to the transfer to him and stated that the payee said that the note was that of the defendant, he opened the door to a denial by the defendant.

KRUSE, P. J., dissented in part, with memorandum.

APPEAL by the defendant, Samuel N. Dada, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 23d day of October, 1917, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 5th day of November, 1917, denying defendant's motion for a new trial made upon the minutes.

*Ernest I. Edgcomb* [*Nottingham, Nottingham & Edgcomb,* attorneys], for the appellant.

*Edward C. Hyle,* for the respondent.

MERRELL, J.:

This action is brought by the plaintiff, Horace E. Clark, to recover of the defendant, Samuel N. Dada, upon a promissory note (Exhibit 1) alleged to have been made by said defendant, of which the following is a copy:

"$670.00          SYRACUSE, N. Y., *February 13th,* 1914.

" Four months after date I promise to pay to the order of Wm. B. Fuller Six hundred seventy and no/100 Dollars at Syracuse Trust Company. Value received, with interest.

"S. N. DADA."

The defendant was at the time of the trial on October 22, 1917, an old gentleman of the age of ninety years, and at and since the time of the alleged making of the note in suit was practically blind and wholly unable to see or read writing or printing. He had been a practicing attorney at law at Fulton, N. Y., but for a number of years had resided at Syracuse, N. Y., with the payee named in the note, who was his son-in-law, and who was also a lawyer. William B. Fuller, the payee named in the note in suit, was on January 25, 1917, by order of the county judge of Onondaga county, upon the certificate of two qualified medical examiners, adjudged insane and committed to the St. Lawrence State Hospital for treatment.

There has never been any adjudication of lunacy and no proceedings have ever been taken for the appointment of a committee of the person or property of said Fuller. It, however, appeared upon the trial that he was still confined in said State hospital.

· The circumstances under which the note in suit came into plaintiff's possession are interesting. Plaintiff's complaint is the usual one upon a promissory note and alleges the making and delivery of the note by defendant to the payee, William B. Fuller, but does not allege that such making and delivery was for value. The complaint further alleges that before maturity the said note was duly indorsed and delivered by the said payee to one M. Stanley Powell, for value, and that thereafter and on or about the 1st day of November, 1915, the said Powell indorsed and delivered the said note to the plaintiff, for value. By his answer the defendant denies generally the allegations of the complaint as to the making and delivery of the note, and specifically alleges that he never signed or delivered to said William B. Fuller or any other person the note mentioned in the complaint, or any note for $670. In his answer defendant further alleges his blindness and inability to read, and that if he ever signed said note, he was induced so to do by fraudulent representations of his son-in-law, Fuller, as to its purpose, and that the same was wrongfully diverted by his said son-in-law, and defendant denies that he ever· received any consideration for said note. Defendant in his answer also alleges that the pretended transfers of the note to Powell and to plaintiff were without consideration, and after maturity, and that thereby neither indorsee became a *bona fide* holder or owner thereof for value.

The evidence upon the trial did not disclose the consideration of the note in suit and defendant was not permitted to deny that he made it, nor to testify as to the circumstances under which it was obtained, if in fact he ever signed or delivered it.

To prove his cause of action plaintiff first swore two employees of the Syracuse Trust Company — the paying teller and a bookkeeper — who testified that defendant for several years had had an account in said institution and that through handling his checks they had become familiar with

his handwriting, although neither had ever seen him write. A signature card was produced bearing defendant's alleged signature and which they swore was kept at the bank or the identification of defendant's signature. It was not shown that the signature upon the card was made by defendant. Said witnesses were then permitted to testify that in their opinion the signature to the note in suit was defendant's. It was upon such slender evidence that plaintiff rested his case so far as the execution of the note by defendant was concerned. Neither of these witnesses had ever seen him write. Such familiarity with his signature as they professed came from handling checks which had passed through the bank, none of which were produced upon the trial and none of which they saw him sign, and concerning the genuineness of the signatures of which they had no personal knowledge. And they were only able to testify that in their opinion the note bore defendant's signature after comparing the same under a powerful magnifying glass with the deposit card bearing defendant's name, which neither saw him write.

The fact that at these times defendant was blind and probably unable to make uniform signatures greatly weakens any probative value of such testimony. Plaintiff next swore M. Stanley Powell, the person to whom it is claimed Fuller, the payee, indorsed the note. Powell has been somewhat of a wanderer. At the time of the trial he claimed to be a resident of New Jersey, but that for two years he resided at Syracuse, N. Y., and there became acquainted with the said William B. Fuller. Powell accounts for his connection with the note in suit through business transactions with Fuller. Powell was a promoter and claims to have sold Fuller certain stock for which he held Fuller's notes. On May 22, 1914, Powell testifies Fuller's notes were merged in one renewal note made by Fuller for $960, payable to the order of Powell three months from date. Powell testifies that at the time of making such renewal note he demanded additional security of Fuller and that the latter then turned over to him as such collateral security the note in suit. Powell testified as to seeing Fuller indorse the same and that Fuller told him that it was defendant's note. Powell claims to have held the note from May 22, 1914, until he turned it over to plaintiff on November 1, 1915,

and though long past due admits that he never presented the same at the Syracuse Trust Company for payment and never called upon defendant for pay thereon, nor in any manner communicated with defendant with reference thereto. Fuller's $960 note held by Powell was at its maturity on August 22, 1914, again renewed for three months, and such renewal note was offered and received in evidence as Exhibit 3. At its maturity, on November 23, 1914, this last note was still again renewed for $960, and this final renewal note was received in evidence as Exhibit 4, but for some reason Exhibit 3, of which Exhibit 4 was a renewal, was not surrendered to Fuller. So that, as matters stood on November 23, 1914, and thereafter, as Powell claims, he held Fuller's note for $960 for the latter's indebtedness, and as collateral thereto held the note in suit. On November 1, 1915, Powell claims to have transferred both of said notes to the plaintiff by indorsement. Powell was an entire stranger to plaintiff, the deal whereby plaintiff claims to have obtained said notes being engineered by a Mr. Hyle, an attorney of Syracuse, to whom Powell had delivered said notes for collection. Powell, residing out of the State and not desiring to bring suit in his own name, employed Hyle to bring action through a resident, and plaintiff testifies that Hyle wanted him to take the notes in his name so he could bring action thereon. Plaintiff paid nothing for the notes, but if successful under his arrangement with Hyle was to pay to Powell two-thirds of whatever he recovered, and retain the other third for his trouble.

Nothing further was done about the note in suit until August seventh of the next year (1916) when Hyle wrote defendant asking him to call at his office at his earliest convenience, as he wished to talk with defendant about a matter in which the latter was interested. The next morning defendant in company with his wife went to Hyle's office and the note in suit was for the first time presented and read to defendant. Defendant then told Hyle that he had never seen and that he knew nothing about the note. From the time when the note in suit is claimed to have been given on February 13, 1914, down to the time defendant was called to Hyle's office on this blind errand, neither when held by the

payee, by Powell or by the plaintiff was it presented at the place where by its terms it was payable and no demand ever made upon defendant for its payment. During all this time defendant was financially solvent and had an account in the Syracuse Trust Company where the note by its terms was payable. Adding to these rather unusual circumstances the fact that the note was placed in plaintiff's name merely for collection under a percentage agreement whereby plaintiff was to receive one-third of whatever he was able to get and Powell to receive two-thirds, the whole transaction becomes suspicious.

Upon the trial defendant was precluded from denying the making of the note in suit, and from giving any testimony with reference thereto under section 829 of the Code of Civil Procedure as involving a transaction with Fuller, through or under whom the plaintiff claimed to have derived title to the note, it being claimed by plaintiff that Fuller was a lunatic, under the provisions of said section of the Code. To the refusal of the trial court to permit defendant to give such testimony the defendant duly excepted.

At the close of the evidence the learned trial court held that the plaintiff had made out a *prima facie* case and that there was no question of fact for the jury to pass upon and directed a verdict for the amount due upon the note in suit, and thereon the judgment appealed from was entered.

We are of the opinion that in such disposition of the case the learned trial court erred and that upon several grounds the defendant, appellant, is entitled to a reversal:

*First.* This action is not brought by the real party in interest. There was never any actual or *bona fide* assignment of the note in suit to plaintiff. Powell, without consideration, turned the note over to plaintiff, and still is interested in the action to at least two-thirds of the amount recovered — at least he was a copartner or coadventurer with plaintiff in the enterprise of collecting the note and surely was interested in the event. Touching his interest in the collection of the note, Powell, on his direct examination, gave the following testimony: " Q. You turned them [the notes] over to somebody else? A. Yes. Q. State what was done then? A. I lived out of the city and was not in a position to prosecute them;

so I sold them or made arrangements with Mr. Clark to prosecute the case."

On cross-examination Powell testified as follows: " Q. * * * You turned these notes over to Mr. Clark simply for the purpose of having him bring the action? A. Yes, sir. Q. And you have got considerable interest in the outcome of this case, haven't you? A. Ought to."

And on re-cross examination: " Q. Then if there is a recovery in this case you are to get part of the proceeds as a consideration for your transferring this note to Clark? A. Yes, sir."

And on re-direct: " Q. Do you mean that or are you to be paid? A. I am to be paid if he recovers. Q. You were not to be paid part of the proceeds of this action? A. No, sir. Q. You were to be paid so much money? A. Yes, sir."

And on re-cross: " Q. That is if there is a recovery? A. Certainly."

The plaintiff, Clark, on cross-examination testified as follows: " Q. And Mr. Hyle told you that he wanted you to take these notes in your name so that he could bring an action on them, didn't he? A. Not exactly. Q. That is the substance of it? A. Yes, sir. Q. You didn't pay any money for these notes? A. Not at that time. Q. You never have any time, have you? A. No, sir, not yet. Q. And if you succeed in this action you are to get a little something out of this for your trouble and the rest is to go to Mr. Powell and Mr. Hyle? A. I shall turn over a certain percentage to Mr. Powell. Q. And you are to get your pay for what you have done in this case out of the percentage which you keep out of the recovery if you happen to get one; is that right? A. That is it."

On re-direct Clark testified: " Q. How much did you agree to pay Powell? A. Two-thirds. * * * Q. Then was there anything said about the other? A. No, nothing at all. Q. And when were you to pay it? A. As soon as I got it."

It thus conclusively appears that plaintiff was a mere dummy and that the real party in interest is Powell. The action should have been brought in his name, or at least he should have been made a party plaintiff with Clark. (Code Civ. Proc. § 449.)

There was no express trust created by the arrangement between Powell and plaintiff, and plaintiff cannot maintain the action. (*Taylor* v. *Surget*, 14 Hun, 116; *Bell* v. *Tilden*, 16 id. 346; *Iselin* v. *Rowlands*, 30 id. 488; *Moppar* v. *Wiltchik*, 56 Misc. Rep. 676.)

*Taylor* v. *Surget* (*supra*) was a case where a promissory note was transferred without consideration and the transferee, a stranger to the transferor, brought action in his own name to collect the note. The Circuit Court held that he could not maintain the action and the complaint was dismissed. The General Term (First Department) unanimously sustained the Circuit. Justice BRADY writing says, at page 117: "It is very apparent that the transfer was made for the purpose of prosecuting the note, and that the plaintiff to whom it was transferred received it for that purpose. He failed to show any legal title to the note, because of the manner in which it was transferred. He also failed to show any equitable title, because there was no proof that he parted with any consideration for it. On the contrary, the evidence tends to show quite strongly that he paid nothing. Under such circumstances the complaint was properly dismissed."

*Second.* The evidence presented a fair question of fact which should have been submitted to the jury as to whether defendant signed the note in suit.

Not only was plaintiff's evidence of defendant's signature to the note of slight probative force, but the circumstances under which it was held by Powell and by plaintiff for so long a time without communicating in any way with defendant with reference thereto, or presenting the same to the bank where by its terms it was made payable for payment, are peculiar and lend force to the suggestion that the delay was in anticipation of the death of this old gentleman who alone could successfully contest it. Adding to these circumstances the unusual compact whereby plaintiff was to receive one-third of the avails of the note for lending his name as plaintiff in the action to collect, something more than a mere suspicion arises that the pretended note was invalid. In any event plaintiff's evidence was not conclusive. The jury should have passed upon its sufficiency. (*Cornish* v. *Farm Buildings Fire Ins. Co.*, 74 N. Y. 295.) But, beyond all this, a bit of evidence

did creep into the case which it seems to me is of itself.
sufficient to present a question of fact as to whether defendant
ever signed the note.   Defendant was asked: " Q. When was
your attention first called to this note, Exhibit 1, for $670? "
To this question plaintiff objected.   The court overruled
his objection and he was permitted to answer as follows:
" A. It was in August of last year.   Q. August, 1916?   A.
August, 1916.   Q. And how was it called to your attention
at that time?   A. I received a line through the mail from
Mr. Hyle.   That you have in your possession.   I couldn't
read it, but my wife read it to me.   Q. After receiving that
letter did you and your wife go to Mr. Hyle's office?   A. We
did, the very next morning."

This testimony of defendant that his attention was first
called to the note in August, 1916, was tantamount to a
denial that he had signed it on February 13, 1914, and while
it was received under plaintiff's objection it was never stricken
out, but remained in the case and was evidence for the jury
when the verdict was directed.

The case should have gone to the jury.

*Third.* The court erred in excluding defendant's testimony
relative to the note in suit, and in sustaining plaintiff's
objection thereto under section 829 of the Code of Civil
Procedure.   That section, so far as pertinent, provides as
follows: " Upon the trial of an action   *   *   *   a party
*   *   *   shall not be examined as a witness in his own behalf
or interest,   *   *   *   against   *   *   *   the committee of a
lunatic, or a person deriving his title or interest from, through
or under a   *   *   *   lunatic, by assignment or otherwise, con-
cerning a personal transaction or communication between the
witness and the   *   *   *   lunatic, except where the   *   *   *
committee or person so deriving title or interest is examined
in his own behalf, or the testimony of the lunatic   *   *   *   is
given in evidence concerning the same transaction or
communication."

Plaintiff insisted that he was, within the meaning of said
section, a person deriving his title through Fuller, a lunatic,
and that defendant's testimony against him as to the note in
question was against the inhibition of the section as it con-
cerned a personal transaction between defendant and Fuller.

We think there are several answers to plaintiff's position:

*a.* While, for the purpose of his commitment to the St. Lawrence State Hospital for treatment, Fuller had been adjudged insane by the county judge of Onondaga county, we do not think there had been such an adjudication of lunacy as to bring him within the purview of section 829. No proceedings were ever taken in the nature of a writ *de lunatico inquirendo* to inquire into his mental condition and no committee was ever appointed of his person or property. It will be noted that the section refers repeatedly to the committee of a lunatic: " A party * . * * shall not be examined as a witness in his own behalf or interest * * * against * * * *the committee of a lunatic,* or a person deriving his title or interest from, through or under a * * * lunatic * * *, except where the * * * *committee* or person * * * is examined in his own behalf," etc. It seems to us that the Legislature had in mind a lunatic so adjudged after a trial and finding by a court of competent jurisdiction in proceedings taken under the Code for that purpose. While Fuller has been committed as an insane patient, he never has been adjudged a lunatic. A person may be insane on some few subjects and entirely rational on most matters. In a large proportion of cases patients committed to hospitals for treatment of the insane recover and are released and are able to resume their usual vocations. The sound reason for forbidding testimony of witnesses as to personal transactions with deceased persons whose lips are forever sealed does not apply to cases of persons committed to State hospitals who might be able to dispute testimony offered touching personal transactions. On the other hand, an adjudication of lunacy is founded only upon incompetency to manage one's self or his affairs in consequence of lunacy, idiocy, etc. The only procedure by which a person may be adjudged a lunatic is provided by title 6 of chapter 17 of the Code of Civil Procedure. Hence we do not think that the testimony offered by defendant concerned a personal transaction or communication with a lunatic.

*b.* By putting the note in evidence plaintiff opened the door for a denial by defendant that he ever signed it. When plaintiff produced the note and gave testimony of defendant's

signature thereon, which the court held sufficient, and of its subsequent transfer to plaintiff and the note was then offered and received in evidence, it was upon the presumption which followed of its delivery by the maker to the payee. To overcome the same we think the defendant should have been permitted to testify. His testimony might have shown the note to have been a forgery. He might have testified to absence or other facts proving that the instrument was spurious. In such case his testimony would not have involved any personal transaction with Fuller as there would have been none.

*c.* But we think testimony was offered by plaintiff which unquestionably opened the door for much of the testimony excluded. Powell was upon the stand and he was asked the following questions and made the following answers: " Q. Now then, I show you Exhibit 1, for identification and I ask you if you recognize that paper? A. I do. Q. And under what circumstances did that paper come into your hands? A. I demanded of Mr. Fuller some security on his notes, these others and the renewals, and he gave me that *and which he said was Mr. Dada's."*

As conclusively shown by the evidence Powell was the real party in interest in the action and he was the person who derived title to the note through Fuller, the alleged lunatic. He was examined in his own behalf concerning the same transaction about which defendant was sought to be examined, to wit, the making of the note in suit. It was quite unnecessary as proof to establish his cause of action and probably inadvertent, but he testified that Fuller, the payee, told him that the note *was Mr. Dada's.* This clearly opened the door for a denial by Dada that the note was his. (*Sweet* v. *Low,* 28 Hun, 432; *De Verry* v. *Schuyler,* 28 N. Y. St. Repr. 233.)

The case of *Sweet* v. *Low (supra)* seems particularly in point. In that case the plaintiffs, administrators, were both sworn in their own behalf and testified that after their intestate's death they found among his assets the note purporting to have been made by defendant; that the note was subsequently lost, but each plaintiff testified as to the finding of the note after the death of the deceased and each swore that he was familiar with defendant's handwriting and that

in his opinion the signature to the note was defendant's. Defendant was then called as a witness in his own behalf and asked whether he ever gave to the deceased a note of the description testified to by plaintiffs. This question was objected to by plaintiffs as incompetent under section 829 of the Code, and the testimony was excluded. In reversing the General Term said: " We think that the learned judge at the trial erred, for two reasons:

" *First.* By section 829 of the Code of Civil Procedure, the defendant was only precluded from giving evidence concerning a transaction had with the deceased, provided the plaintiffs had not given evidence ' concerning the same transaction or communication.'

" To make the evidence of the defendant proper under section 829, it was not necessary that the plaintiffs should have detailed a transaction or communication between the deceased and the defendant, which occurred in their presence, and of which occurrence their evidence was claimed to be a true history. If they gave any evidence which concerned the transaction between the deceased and the defendant, they then gave such evidence as would allow the defendant to give in his own behalf testimony ' concerning the same transaction or communication.' *A witness who gives testimony either of a subsequent conversation or transaction which tends to show what a prior transaction or communication was, really gives evidence ' concerning ' such prior transaction.* The plaintiffs in this case when they testified that they had found among the papers of the deceased a promissory note made by the defendant and payable to the deceased, gave evidence ' concerning ' a transaction between the defendant and such deceased [*Markell* v. *Benson,* 55 How. Pr. 360, see page 363]; and, therefore, the defendant was at liberty to prove that he had given no note to the deceased, as the plaintiffs had by their evidence attempted to show.

" *Second.* If, however, it can be held that the plaintiffs gave no evidence concerning a transaction between the defendant and the deceased, because they did not undertake to give their version of a transaction between such persons, which they had personally witnessed, then the offer of the defendant to prove that he had never given such a note as

the plaintiffs pretended to have found, was proper to contradict the evidence given by the plaintiffs. By their testimony in their own behalf, the plaintiffs had endeavored to satisfy the jury that they had found among the papers of the deceased a note made by the defendant and delivered to their intestate. If it was proper for the plaintiffs to give such testimony, and of its propriety there is no doubt, then it was equally competent for the defendant to contradict such evidence by showing that he had never given such a note as the plaintiffs claimed to have found, and to have been possessed of; and such evidence, which would have been clearly in contradiction of that given by the plaintiffs, should not have been excluded upon the ground that it also tended to disprove a personal transaction which the plaintiffs claimed must have occurred between the deceased and the defendant."

For the reasons stated the judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide event.

All concurred, KRUSE, P. J., in result in a memorandum.

KRUSE, P. J. (concurring):

1. I concur upon the first and second grounds stated in the opinion of MERRELL, J. I am also of the opinion that the plaintiff by his own testimony opened the door by giving testimony regarding the making of the note so as to permit the plaintiff himself to give testimony concerning the same.

2. I dissent, however, from so much of the opinion as holds that section 829 applies only to a lunatic who has been so adjudged after a trial and finding of incompetency under title 6 of chapter 17 of the Code of Civil Procedure. The lunatic here had been committed to one of the State hospitals for the insane by a judge having jurisdiction of the matter, and was in the custody of officers in charge of that institution and a ward of the State at the time of the trial. I think that established, at least presumptively, that he was a lunatic within the meaning of section 829, even if the order committing him was made without previous notice to him. (*Sporza* v. *German Savings Bank*, 192 N. Y. 8.)

3. If the evidence fails to establish that the plaintiff was

the owner of the note, the complaint should be dismissed, but I think that possibly there may be enough to make that a question of fact. I, therefore, vote for reversal and a new trial.

Judgment and order reversed upon the grounds stated in the opinion, and a new trial granted, with costs to the appellant to abide event.