GEORGE R. MINNS, as Administrator of CORA MINNS, Deceased, Plaintiff, *v.* VICTOR W. CROSSMAN, Defendant.

GEORGE R. MINNS, Plaintiff, *v.* VICTOR W. CROSSMAN, Defendant.

Supreme Court, Kings Trial Term, February, 1922.

Evidence — negligence action for causing death in extracting teeth — administrator as plaintiff testified to decedent's good health — defendant a competent witness under Civil Practice Act, § 347, as to conversations with decedent — husband's action for loss of services — testimony of defendant admissible.

Where in an action by an administrator to recover damages for the death of his intestate alleged to have been caused by the negligence of defendant, a dentist, in extracting teeth of the intestate, causing one of them to go down her windpipe, thence into her lungs, as a result of which she died, the plaintiff testified that his wife, the intestate, was in good health on the day of the extraction of the teeth, without which testimony there would have been no proof that the acts of defendant were the cause of decedent's death, the exclusion of testimony of defendant as to his conversation with decedent and as to the extraction of teeth, on the ground that under section 347 of the Civil Practice Act he was incompetent to testify, was error; the testimony of the administrator removed the prohibition of the statutes against the defendant's testimony to the transaction.

But in any event such testimony on defendant's behalf should have been admitted in the husband's action to recover for loss of services of his wife, between the time of the alleged malpractice and her death, and a motion in each case to set aside the verdict in favor of plaintiff on the ground of the exclusion of the testimony offered will be granted and a new trial ordered.

MOTIONS to set aside verdicts and for new trials.

*Denis R. O'Brien (Philip A. Brennan,* of counsel), for plaintiff.

*Nadal, Jones & Mowton,* for defendant.

LAZANSKY, J.   Motions to set aside verdicts and for new trials on the ground of the erroneous exclusion of testimony offered by defendant. There are two actions. One is brought by the administrator to recover damages for the death of plaintiff's intestate, alleged to have been caused by defendant's malpractice as a dentist; the other by the intestate's husband for damages due to loss of services, etc., between the alleged malpractice and the death of the intestate.   It was claimed that defendant was negligent in extracting teeth of the intestate, causing one of them to go down her windpipe, thence into her lungs, as a result of which she died.   Plaintiff offered no direct proof of the operation.   The

Misc. 70]                    Supreme Court, February, 1922.

testimony in behalf of plaintiff showed that another dentist sent the intestate to the defendant on April 21, 1920, to have ten teeth extracted and that when he saw her on the twenty-fifth as far as he could see the ten teeth had been extracted; that on the twenty-fourth of May an autopsy was performed upon the intestate and what looked like a tooth was found in her lungs by the physicians. The administrator, who was also the husband, testified that prior to April 22, 1920, the intestate was perfectly healthy; there was nothing wrong with her; she worked at Abraham & Straus'; she had trouble with her teeth before the twenty-second of April; on the evening of April twenty-second she was very " distressful; " she had a hard time breathing; she kept holding her throat; a day or two after she commenced to cough; she didn't sleep at night; she was coughing right along every day until May seventh when a doctor was called; the breathing became more difficult as it went on; she was coughing up mucous; on May twenty-first she was taken to the Brooklyn Hospital; her coughing grew worse up · to that time and her breathing more difficult. A practical nurse testified that she observed the intestate from the seventeenth of May to the twenty-first, when she went to the hospital; she had difficulty in breathing; she continually spit all day long. The defendant admitted by his answer that on April twenty-second he had extracted teeth of the intestate. This was practically all the proof of the plaintiff. The defendant was sworn as a witness in his own behalf. When it was sought to question him about conversations with the decedent and the extraction of teeth the test·mony was excluded upon the ground that the defendant was incompetent to testify under section 347 of the Civil Practice Act (Code Civ. Pro. § 829).

It has been argued by defendant and it may be that one's sense of justice is shocked by the proposition that a man may be charged with lack of skill in his professional acts and yet not be permitted out of his own lips to repel the attack. The history of the law of evidence discloses a reason for such a situation, even if a justification therefor be not found, in light of the present day growing confidence in man's integrity. Up to 1857 (Laws of 1857, chap. 353) a party to an action was not permitted to testify in his own behalf. It was not until 1869 (Laws of 1869, chap. 678) that a defendant in a criminal action was permitted to speak in his own defense. The rule of the common law was that the truth did not lie in the mouth of interest. The change came about because experience showed that injustice was frequently done through the old limitation. Sometimes an honest claim or a righteous defense could not be disclosed because of the antiquated rule. It was concluded out

of human experiences, which after all are the basis of rules of law, that those who tried the facts would be able to discriminate between truth and fabrication, even where interest tempted false testimony. The old common-law rule has been generally obliterated. But the barrier has not been entirely removed. From 1860 (Laws of 1860, chap. 459) down to the present time under provisions varying in form but substantially the same, a party has not been permitted to testify as to a transaction between the party and a deceased person whose representative is also a party. The reason for this has been frequently stated to be " to prevent a person who was or might be assumed to be a partisan witness from giving his version of a transaction with another who was deceased and could not speak." *Abbott* v. *Doughan*, 204 N. Y. 223. When one realizes the hardship of the old common-law rule, the present day limitation supported by the reason therefor does not seem to be so harsh. It has been strongly advocated that even the present limitation should be removed because the truth will not fail, even where partisan interest may speak without direct contradiction. Such a matter is for the legislature and not for the courts.

I do not think that there can be any doubt that the extraction of the teeth in the case at bar was a personal transaction and the conversation a communication. It is, however, urged that the section has no application to a so-called " death " case. It is argued that the causes of action were never claims or causes of action of the decedent and that they do not come within the purview of the section. But the proposed testimony comes exactly within the language of the section. Such a cause of action was brought into existence by legislative edict (Laws of 1847, chap. 450; *Littlewood* v. *Mayor*, 89 N. Y. 24) prior to the enactment of the original section out of which section 347 of the Civil Practice Act grew. If the legislature had not intended to include such a claim it would have been so stated. The question was considered in *Abelein* v. *Porter*, 45 App. Div. 307. That was an action brought to recover damages for death caused by the wrongful acts of the defendant. The defendant was permitted to testify with reference to the acts. The court stated that the testimony of the defendant related to both a communication and a transaction between defendant and a deceased person; it was given in behalf of the defendant, and against an administrator. In that case it was urged that as a cause of action for death is not given to the estate by a deceased person for the purpose of general administration, but for the exclusive benefit of a husband, wife or next of kin, the plaintiff is not an administrator in the ordinary acceptation of that term, but simply a trustee for a certain specified purpose. The court held that the administrator in such a case

was an administrator within the purview of section 829. For other cases on this phase of the case, see 28 R. C. L. 495. The tendency has been to restrict rather than to broaden the limitations of this section. *Griswold* v. *Hart*, 205 N. Y. 384. If all the testimony in this case was given by witnesses other than the administrator, the testimony of the defendant would not be admissible. *Pinney* v. *Orth*, 88 N. Y. 448; *Matter of Callister*, 153 id. 294.

There is nothing in *Markell* v. *Benson*, 55 How. Pr. 360, which throws any light upon the question under consideration. There the defendant, a physician, was charged with malpractice. It was held that it was proper to permit him to testify that he had not prescribed a certain medicine which it is alleged caused the death. This was because the administrator and his wife testified concerning the transaction, the administrator to a conversation had with the defendant after the event and concerning it, the wife to the event. It was held that the administrator's conversation with the doctor was *concerning* the transaction. The difference between the language of section 829 of the Code of Civil Procedure and section 399 of the old Code was pointed out. By the latter the prohibition " did not extend to any transaction or communication *as to which* any such  *  *  *  administrator shall be examined on his own behalf," while the former provides that " the prohibition does not extend to any transaction or communication *concerning* which the administrator gives testimony." As to the wife's testimony, it was held that she was the *alter ego* of the husband, as the law then stood, and when she testified to the transaction it was the same as if the administrator testified. In this way the prohibition under the language of the section was removed.

The only other question involved in the case is whether or not the plaintiff in the administrator's action by testifying " opened the door " for the admission of testimony by defendant with reference to the transaction. Under the section of the Civil Practice Act (347) the defendant has the right to testify if the administrator is examined in his own behalf concerning the transaction. Was the administrator so examined within the meaning of this exception? His testimony was that his wife was in good health on the day of the extraction of the teeth; that in the evening she was ill and thereafter commenced to cough and spit and to breathe heavily until she was taken to the hospital. This was a statement of facts which were no part of and were independent of the transaction. But they were a necessary link in the chain of proof from which the plaintiff sought to have and had drawn the inference that through the defendant's neglect a tooth was caused to be lodged

in the lungs of the decedent. Without the administrator's testimony that decedent had been in good health prior to her visit to the defendant there would have been no proof in the case that the defendant's acts were the cause of her ill health. Without that testimony it could not be said whether or not her illness was caused by or due to some antecedent cause. In any event, without that testimony it would have left the whole matter to conjecture. It was sought by this proof, although it is of independent facts, to have the inference drawn that between the time of her good health and the time of her ill health *something* happened at defendant's office which brought about a condition of ill health. What that something was it was sought to prove by the testimony of other witnesses.

In *Clift* v. *Moses*, 112 N. Y. 426, 435, frequently cited, the court say: " It is too broad a statement that where the ultimate fact cannot be proved under this section by a witness, he cannot testify to any of a series of facts from which the ultimate fact may be inferred; but if there is introduced into this statement the qualification that he cannot testify as to any of the particular facts, which originated in a personal transaction with the deceased, or which proceeded from such transaction as a cause, the statement so qualified may be substantially correct."

Here the inference from the facts testified to by the administrator is of something which originated in a transaction with the deceased, or which proceeded from such transaction as a cause. At page 437 the court say: " The statute cannot be evaded by framing a question which, on its face, relates to an independent fact, when it is disclosed by other evidence that the fact had its origin in and directly resulted from a personal transaction."

While in that case the question was as to the propriety of the living party testifying, the same rule may be applied here, to wit, that although the testimony relates to independent facts, when it is disclosed by other evidence that the fact had its origin in and directly resulted from a personal transaction the prohibition of the statute is removed. Here the cause of the illness following good health is disclosed by the other proof in the case to have originated from the transaction between the decedent and the defendant. *Dougall* v. *Dougall*, 61 App. Div. 282, illustrates this rule. The plaintiff sued the defendant as administratrix for money loaned upon two occasions. In support of the claim one Campbell testified that he was present at the time and saw the money delivered by the plaintiff to the deceased and heard the deceased say, " I don't know whether I will need this money or not. If I don't have to use it I will return it in a few days, and if I do use it I will give

you something to show that I borrowed it of you." The plaintiff called to the stand testified, under objection and exception, that he went to the place where the money is claimed to have been loaned, with the amount in his possession and came away without any money save. a small amount of change in his pocket. It may be said that the defendant did not testify to any transaction with the decedent. But in light of the testimony of the other witness he was, in effect, testifying to the transaction. It was held that this testimony was incompetent, citing *Clift* v. *Moses, supra,* and other cases. The following in *Clift* v. *Moses, supra,* at p. 438, does not seem to comport with what is theretofore said in the case: "Because there arises from a group of independent and separable facts an inference that a personal transaction did or did not take place between the survivor and the deceased, this is no reason for permitting the survivor to rebut such inference by his testimony that he had or did not have a personal transaction with the deceased, which was inconsistent with such inference."

I have concluded that the testimony of the administrator, as above stated, removed the prohibition against the defendant testifying to the transaction, and it was, therefore, error to exclude his testimony. On the trial attention was not called to the fact that a difference in respect of the defendant's testimony existed in the husband's case and in the administrator's case. The husband's action is entirely independent and separate and came into existence during the lifetime of his wife. Our statute does not prohibit generally, as is the fact in some states, testimony concerning a transaction with a decedent. It is only where the action is brought by or against the executor, administrator or survivor of a deceased person of the committee of a lunatic, or a person deriving his title from, through or under a deceased person or lunatic, by assignment or otherwise. While the husband may have had a cause of action because of his wife's illness he did not acquire it through or under her within the meaning of the section. The testimony in any event should have been admitted in the husband's case. Motions to set aside verdicts and for new trials granted.

Ordered accordingly.